IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior District Judge Richard P. Matsch

Civil Action No. 14-cv-01237-RPM

UET RR, LLC,

      Plaintiff,

v.

BENJAMIN D. COMIS,
TALANDA SYKES,
K3B PARTNERS, ULC,
BARRY W. COMIS,
FALCON CREEK ASSET MANAGEMENT, INC.,
RKB INVESTMENTS, LTD,
RICHARD K. BRUGGER,
K. TODD HICKS,
VIERO GROUP, INC.,

      Defendants.

---

### ORDER ON DEFENDANTS' MOTION TO DISMISS

---

On December 16, 2013, UET RR, LLC ("UETRR") obtained a default judgment against Viero Energy, LLC ("Viero Energy") in Texas for $1,560,000, the total amount paid to it for deposits on leases of railroad tank cars which Viero Energy never supplied.  UETRR filed this civil action on April 30, 2014, against defendants Benjamin D. Comis ("Ben Comis"), Talanda Sykes ("Sykes"), K3B Partners, ULC ("K3B"), Barry Comis, Falcon Creek Asset Management, Inc.("Falcon Creek") and RKB Investments, LTD ("RKB"), alleging that they participated in a fraudulent scheme to obtain that money knowing that Viero Energy could not provide the

railcars, then covering up the scheme and fraudulently transferring the money from its bank account with manipulative actions to prevent the plaintiff from recovering the deposits.

In February 2015, UETRR filed an amended complaint in this action, adding facts learned through discovery in post-judgment and bankruptcy proceedings. The amended complaint added K.Todd Hicks ("Hicks"), Richard Brugger ("Brugger"), and Viero Group, Inc. ("Viero Group") to the six defendants named in the original complaint and added new claims. The plaintiff alleges that Viero Energy is a sham corporation, which was used to obtain the deposit funds pursuant to a scheme by the defendants to misappropriate the plaintiff's deposits; strip Viero Energy of its assets making it judgment proof; conceal the scheme, and hinder and frustrate plaintiff's efforts to learn the truth and recover on its judgment.  The amended complaint alleges fourteen claims for relief:  (1) fraudulent misrepresentation; (2) fraudulent non-disclosure and concealment; (3) promissory fraud; (4) fraudulent transfer in violation of C.R.S. § 38-8-105(a); (5) fraudulent transfer in violation of C.R.S. § 38-8-105(b); (6) civil theft in violation of C.R.S. §§ 18-4-401 and 18-4-405; (7) violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962; (8) violation of the Colorado Organized Crime Control Act ("COCCA"), C.R.S § 18-17-104(3); (9) civil conspiracy; (10) negligent misrepresentation; (11) unjust enrichment; (12) breach of the February lease agreement; (13) breach of the March lease agreement, and (14) breach of a repayment agreement.  The plaintiff requests actual and compensatory damages; restitution; avoidance of any wrongful transfer; attachment or constructive trust or other equitable remedy; treble damages; pre- and post-judgment interest, costs and attorneys' fees.

Federal jurisdiction is provided by diversity of citizenship (28 U.S.C. § 1332).  UETRR is a limited liability company formed under the laws of North Dakota, with its principal place of business in Lakewood, Colorado.  Its sole member is United Energy Trading, LLC ("UET"), a limited liability company located in Lakewood, Colorado.  UET's members are citizens of Texas, Colorado and North Dakota.

Defendant Sykes is a Michigan citizen.  Defendants Ben Comis, Barry Comis, Hicks and Brugger are Canadian citizens.  Defendant K3B is an unlimited liability corporation formed under the laws of Alberta, Canada, with its principal place of business in Calgary, Alberta.  Defendant Falcon Creek is a corporation formed under the laws of Alberta, Canada, with its principal place of business in Calgary, Alberta.  Defendant RKB is a corporation organized under the laws of Manitoba, Canada, with its principal place of business in Brandon, Manitoba.  Defendant Viero Group is a corporation organized under the laws of Canada, with its principal place of business in Calgary, Alberta.  Complete diversity exists between UETRR and the defendants and the amount in controversy exceeds the jurisdictional threshold.

The amended complaint includes a RICO claim, which invokes federal question jurisdiction (28 U.S.C. § 1331).

Defendant Sykes did not respond to the complaint and has been found in default.  On March 10, 2015, the other eight defendants jointly moved for dismissal pursuant to Fed.R.Civ.P. 12(b)(2), (6) and (7).[1]

---

[1]The Defendants' motion mistakenly refers to Fed.R.Civ.P. 12(b)(1) (lack of subject-matter jurisdiction), but does not challenge the complaint on the basis.

UETRR purchases crude oil and transports it by rail for resale.  UETRR has assembled a fleet of railcars for transporting crude oil purchased in several producing regions, including the Bakken field in North Dakota.  UETRR manages its railcar fleet from its office in Lakewood.

In 2012, David Balleau ("Balleau") became acquainted with defendant Ben Comis when Balleau was serving as UET's director of crude oil origination.  Balleau and Ben Comis began communicating about trading crude oil in the Bakken field.

Balleau worked from UET's office in Lakewood.  Ben Comis resides in Canada, in the province of Manitoba.  Balleau and Ben Comis communicated primarily by email and cell phone.  Balleau sometimes spoke from a desk phone in UET's office in Colorado.

Ben Comis represented himself to be a manager of Viero Group and its affiliate, Viero Energy.  Viero Energy is a Nevada limited liability company.  On a website, Viero Energy described itself as an oil and gas company doing in business in North America, with locations in Calgary and Houston.

Viero Energy and Viero Group are solely owned by K3B Partners.[2]

Ben Comis is one of the four members of K3B.  The other three are Barry Comis, Falcon Creek, and RKB.  RKB is solely owned and managed by Brugger.  Falcon Creek is solely owned and managed by Hicks.  At all relevant times, Hicks has been the president and managing director of K3B.  Hicks, Brugger, Barry Comis and Ben Comis are the directors of K3B.

---

[2]In a disclosure report filed with the State of Nevada in August, 2012, Viero Energy stated that it was owned and managed equally by K3B and Minks, LLC ("Minks"), a Michigan company.  The owner of Minks (Mohammed Janny) testified in his deposition that Minks severed its relationship with Viero Energy in December 2012.  There appears to be no dispute that during most of period relevant to this action, Viero Energy has been solely owned by K3B.

When Ben Comis learned from Balleau that UETRR needed railcars, he sent an email to Balleau on July 9, 2012, stating that 300 railcars were available for lease.  UETRR contends that was a false statement.

In September 2012, Sykes opened a bank account for Viero Energy at a JP Morgan Chase branch in Lathrup Village, Michigan.  Hicks, as president and managing director of K3B, had provided Sykes with written authorization to act as a manager and representative of Viero Energy in connection with banking transactions.

The signatories on Viero Energy's Chase Bank account were Ben Comis and Sykes.  The Chase account was Viero Energy's only bank account.

Communications between Ben Comis and Balleau continued during the second half of 2012.  Ben Comis sent emails to the other K3B directors (Hicks, Brugger and Barry Comis), advising them of these communications with Balleau.

On February 8, 2013, Ben Comis and Balleau exchanged emails about a railcar lease for 100 railcars.  Ben Comis confirmed that Viero had railcars for lease and that the railcars were "…100 days out just so there is no confusion."  The plaintiff contends those statements were false.  According to the plaintiff, Viero Energy's bank account was overdrawn on February 1, 2013, and it had no physical assets.

After several email exchanges, Ben Comis and Balleau agreed on the general terms of a lease for 120 railcars.  UET's general counsel, Ken Thomson, began preparing a written agreement.  Thompson worked from UET's offices in Lakewood, Colorado.  Drafts of the written agreement were exchanged by email.

On February 19, 2013, UETRR and Viero Energy entered into a written Railcar Lease Agreement (the "February Lease").  The February Lease required Viero Energy to deliver 120 General Purpose 30,000 gallon (GP 31) railcars for a minimum lease term of 12 months.  The monthly rental was $2,600 per car, for a total projected monthly rental of $312,000.  The February Lease required UETRR to pay Viero Energy $624,000 as a deposit to secure the lease. The date for delivery was June 1, 2013.

An executive vice president of UET signed the February Lease on behalf of UETRR in Colorado.  Ben Comis signed the lease in Manitoba, Canada, as a manager and owner of Viero Energy.

After the February Lease was signed, Ben Comis sent an email to Thomson, directing UETRR to wire the deposit to Viero Energy's Chase bank account.  UETRR made a wire transfer of $624,000 from a bank account in Bismark, North Dakota to Viero Energy's bank account in Michigan on February 20, 2013.

In early and mid-March, 2013, Balleau and Ben Comis exchanged emails regarding the anticipated arrival time for the 120 railcars.  They also communicated about a second railcar lease.  Ben Comis and Thomson exchanged emails, attaching drafts of a second written lease agreement.

On March 19, 2013, UETRR and Viero Energy entered into a second railcar lease (the "March Lease").  The March Lease required Viero Energy to deliver 180 General Purpose 30,000 gallon (GP 31) railcars for a minimum lease term of 12 months. The monthly rental was $2,600 per railcar, for a total of $468,000 per month.  The delivery date was July 31, 2013.  The March Lease required UETRR to pay Viero Energy $936,000 as a deposit to secure the lease.

Ben Comis signed the March Lease in Canada.  UET's President, Tom Williams, signed the March Lease at UET's offices in Lakewood, Colorado.

On that same date, Ben Comis sent an email to Thompson and Balleau, instructing UETRR to send the deposit for the March Lease to Viero Energy's Chase bank account.  On March 21, 2013, UETRR made a wire transfer of $936,000 from a bank account in Bismark, North Dakota to Viero Energy's bank account in Michigan.

In March and April, 2013, Ben Comis and Sykes continued sending Balleau emails about the expected delivery dates for the railcars.  In mid-April, 2013, Ben Comis and Sykes traveled to Colorado and met with representatives of UET and UETRR at their Lakewood office.  In May 2013, Ben Comis and Balleau communicated about the possibility of a third railcar lease.

In early June, 2013, Sykes and Ben Comis advised UTERR by email that railcars for the February Lease would not be available for several months.  Balleau responded by email, expressing UETRR's dissatisfaction and requesting updated information.

Ben Comis and Balleau discussed a proposal for UET to provide financing to Viero Energy, and Ben Comis sent Balleau a financial statement for Viero Energy for the first six months of 2013, which the plaintiff claims to be fraudulent.  No financing was provided.

Because Viero Energy had not delivered any of the railcars as required by the February Lease by July, 2013, UETRR terminated both leases and demanded that Viero Energy return the deposit funds in a letter dated July 19, 2013.

In email communications with Balleau and Thomson, Ben Comis acknowledged that Viero Energy owed UETRR the return of its deposit funds.  Ben Comis told UETRR that Viero

Energy could not make immediate repayment because it had already provided payment in full for the railcars and did not have the funds.  UETRR contends those statements were false.

Comis and Sykes represented that Viero Energy would begin returning the deposit funds by making a partial payment.  There were negotiations about a repayment plan.  A written agreement was prepared but not signed.  In an email dated September 12, 2013, Sykes told Thomson that Viero's "cash is presently diminished."

In an email to Thomson, dated September 20, 2013, Sykes stated that Viero was prepared to commit to sending payment on October 4, 2013.  No payment was made.

In September 2013, UETRR filed suit against Viero Energy in the District Court for Harris County, Texas, alleging claims for rescission of the railcar leases and breach of contract.  Viero Energy did not appear or respond to the Texas complaint.  In October, 2013, the Plaintiff obtained a pre-judgment writ of attachment against Viero Energy's Chase bank account and obtained approximately $17,500.  On December 16, 2013, the Texas court entered default judgment against Viero Energy, in the amount of $1,560,000, and pre- and post-judgment interest, attorneys' fees, court costs and expenses.

The plaintiff initiated post-judgment discovery in the Texas action.  Viero Energy did not respond to discovery requests.  The plaintiff obtained discovery from other persons and entities, including Chase Bank, and began tracing Viero Energy's transfers from the bank account to which UETRR had wired the deposits.

The complaint initiating this action was filed on April 30, 2014.

Ben Comis answered the complaint on September 17, 2014, denying liability.  His answer included "lack of *in personam* jurisdiction" as an affirmative defense.  Defendants Barry

Comis and RKB Investments moved for dismissal for lack of personal jurisdiction.  This Court permitted limited discovery of facts related to personal jurisdiction and set a deadline of December 31, 2014 for that discovery.

The plaintiff continued post-judgment collection efforts in the Texas action. The plaintiff registered the Texas judgment in Canada and took the deposition of Ben Comis in Winnipeg, Manitoba, Canada, following Canadian procedures.

Through post-judgment discovery in the Texas action, UETRR learned that in February and March 2013, Viero Energy paid approximately $1,193,000 to SBG Transport LLC ("SBG") from the Chase account.  SBG is an Arkansas company that was to supply the railcars for the leases between Viero Energy and UETRR.  The plaintiff alleges that SBG had no experience with railcar leasing and lacked financial capacity for such an endeavor.  The plaintiff alleges that SBG and Viero Energy purportedly planned to obtain the railcars from China.  The plaintiff states that imported railcars must be certified for use in the United States, and the Chinese railcars that SBG purportedly sought to obtain for Viero Energy were never certified during any time relevant to this action.  UETRR asserts that – at the direction of Ben Comis –SBG paid $362,000 to K3B on June 7, 2013, and that K3B distributed those funds to Ben Comis, Sykes, Falcon Creek, RKB, and the Viero Group.  UETRR contends this is evidence to support its claim that the K3B owners perpetrated this fraud on it and other creditors.

UETRR further alleges that on April 26, 2013, Viero Energy paid $235,336 to K3B, and that K3B had disbursed those funds to Ben Comis, Sykes, Falcon Creek and RKB.[3]  UETRR

---

[3]The payment dated April 26, 2013, occurred shortly after Viero Energy was sued in a civil action captioned *Parlay Shipping & Trading, L.L.C. v. Viero Energy, L.L.C.*, Case No. 13-cv-02683-SAS, in the United States District Court for the Southern District of New York.

asserts that Ben Comis and Sykes had each withdrawn $15,000 from Viero Energy's Chase account in August, 2013.

In late December 2014, K3B filed for bankruptcy relief in Canada.  UETRR obtained relief from the stay imposed by that bankruptcy proceeding.

On January 5, 2015, Viero Energy filed for Chapter 7 bankruptcy relief in the United States Bankruptcy Court for the District of Nevada.  By order dated February 18, 2015, the Nevada bankruptcy court granted relief from the automatic stay to UETRR and found that Viero Energy's bankruptcy petition had been filed in bad faith.  By order dated May 1, 2015, the Nevada Bankruptcy Court dismissed Viero Energy's bankruptcy petition, permanently barred Viero Energy from initiating any further bankruptcy proceedings anywhere in the world, and awarded sanctions against Viero Energy and its bankruptcy counsel.

*Personal jurisdiction*

The moving defendants argue that none of them has sufficient contacts with Colorado to support this court's exercise of personal jurisdiction.  Ben Comis states in his affidavit that his activities with respect to the railcar leases were undertaken solely on behalf of Viero Energy, and that he conducted all of his telephone and email communications with UETRR from his home in Manitoba, Canada.  He acknowledges that in April 2013, he met with representatives of UET in Colorado, but portrays that trip as unrelated to the railcar leases.  He states those discussions related to other potential transactions with UET (not UETRR).

Hicks, Brugger and Barry Comis state in affidavits that they never engaged in any business in Colorado, never traveled to Colorado for personal or business reasons, and did not take any active role in the railcar leases or any transactions between Viero Energy and the

plaintiff.  They portray themselves as merely passive investors in Viero Energy, through their interests in K3B.  They state that any actions they took with respect to the management of K3B occurred outside of Colorado.  They also state that the Ben Comis had no authority to act on behalf of K3B because that entity can act only with the express consent of the majority of its shareholders and the majority did not provide such consent with respect to Ben Comis's actions.

The defendants assert the railcar leases between Viero Energy and UETRR do not show that any of them transacted business in Colorado.  They argue that no tort was committed in Colorado, pointing out that the plaintiff's deposit funds were transferred from the plaintiff's bank account in North Dakota to Viero Energy's bank account in Michigan and all subsequent transfers occurred outside of Colorado.

The plaintiff argues that the Colorado long-arm statute, C.R.S. § 13-1-124, provides this Court with specific jurisdiction over the defendants.  That section provides in pertinent part:

> (1) Engaging in any act enumerated in this section by any person, whether or not a resident of the state of Colorado, either in person or by an agent, submits such person and, if a natural person, such person's personal representative to the jurisdiction of the courts of this state concerning any cause of action arising from:
>
> (a) The transaction of any business within this state;
>
> (b) The commission of a tortious act within this state; ....

C.R.S. § 13-1-124.

To determine whether the court has personal jurisdiction over a defendant, the court must ask "(1) whether the applicable statute potentially confers jurisdiction by authorizing service of process on the defendant and (2) whether the exercise of jurisdiction comports with due process." *Niemi v. Lasshofer*, 770 F.3d 1331, 1348 (10th Cir. 2014) (quoting *Trujillo v. Williams*, 465 F.3d 1210, 1217 (10th Cir. 2006)).  "Because Colorado's long-arm statute 'confers

the maximum jurisdiction permissible consistent with the Due Process Clause . . . the first,

statutory, inquiry effectively collapses into the second, constitutional, analysis.'" *Niemi*, 770

F.3d at 1348 (quoting *Dudnikov v. Chalk & Vermilion Fine Arts, Inc*., 514 F.3d 1063, 1070 (10th

Cir. 2008)).

"[T]o exercise jurisdiction in harmony with due process, defendants must have 'minimum

contacts' with the forum state, such that having to defend a lawsuit there would not 'offend

traditional notions of fair play and substantial justice.'" *Dudnikov*, 514 F.3d at 1070 (quoting

*Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  The standard for determining whether

the defendant had sufficient minimum contacts is sometimes framed as the "purposeful

availment" test (most commonly applied in contract actions) or the "purposeful direction"test

(often applied in tort actions).  *See Dudnikov*, 514 F.3d at 1071.  Regardless, the aim is "to

ensure than an out-of-state defendant is not bound to appear to account for merely 'random,

fortuitous, or attenuated contacts' with the forum state." *Id*. (quoting *Burger King Corp. v.

Rudzewicz*, 471 U.S. 462, 475 (1985)).

The starting point for the jurisdictional analysis is the conduct of Ben Comis and Sykes,

undertaken on behalf of Viero Energy.  The plaintiff has shown that they directed many

communications to the plaintiff and its corporate parent in Colorado over a period of

approximately 15 months and that Ben Comis and Sykes came to Colorado and met with

representatives of the plaintiff and UET.  The plaintiff has provided affidavits and documents

showing that Ben Comis and Sykes provided false information to the plaintiff both before and

after Viero Energy obtained the deposit funds.  The documents provided by the plaintiff support

its contention that it was the target of an ongoing fraudulent scheme, orchestrated by Ben Comis

and aided by Sykes.  The contacts of Ben Comis, Sykes and Viero Energy/Viero Group with Colorado were not isolated contacts and they were not the result of unilateral activity of the plaintiff.  Their contacts cannot be characterized as random, fortuitous, or attenuated.

Ben Comis answered the original complaint without moving for dismissal.  At an earlier stage in these proceedings, defendants' counsel represented that Ben Comis did not contest jurisdiction.  That is not surprising in light of the extensive communications that Ben Comis directed to the plaintiff in Colorado.

There is no evidence that Barry Comis, Hicks, Falcon Creek, Brugger, or RKB communicated directly with UETRR or that they had any direct participation in the railcar leases or any other transaction with the plaintiff.  The plaintiff has adequately alleged facts that would make them liable for the actions of Ben Comis and Sykes and make the Colorado contacts of Ben Comis and Sykes attributable to them.

"The existence of a conspiracy and acts of a co-conspirator within the forum may ... subject another co-conspirator to the forum's jurisdiction." *Melea, Ltd. v. Jawar SA*, 511 F.3d 1060, 1069 (10th Cir. 2007) (citing *Lolavar v. de Santibanes*, 430 F.3d 221, 229 (4th Cir. 2005)). *See also Hart v. Salois*, 2015 WL 1020369, *4 (10th Cir. Mar. 10, 2015) (unpublished) ("[A] co-conspirator's presence within the forum might reasonably create the 'minimum contacts' with the forum necessary to exercise jurisdiction over another co-conspirator if the conspiracy is directed towards the forum, or substantial steps in furtherance of the conspiracy are taken in the forum."). The allegations of the complaint are sufficient to support the plaintiff's contention that the defendants participated in a conspiracy to misappropriate the deposit funds.

The alter ego or corporate veil piercing doctrine, most often applied to impose liability on corporate shareholders, is also relevant to the determination of personal jurisdiction.

The plaintiff alleges and has provided documents showing that Viero Energy was undercapitalized; that it was a mere shell entity; that it provided false information in government filings, on a website, and to the plaintiff; that it was used as a conduit to funnel the plaintiff's deposit funds to K3B and its insiders and affiliates, and that the Viero Energy bankruptcy petition was filed in bad faith. For the purpose of jurisdictional analysis, Viero Energy's corporate identity should be disregarded, and the jurisdictional contacts of Ben Comis and Sykes imputed to K3B.

K3B is a Canadian unlimited liability company. Under Canadian, law, all shareholders of an unlimited liability corporation are themselves jointly liable for the corporation's liabilities, obligations, and debts and may be sued directly.

That form of doing business supports the plaintiff's contention that Ben Comis acted as an agent of K3B and its shareholders and directors. The acts of an agent can subject his principal to specific jurisdiction under the Colorado long-arm statute. *See Goettman v. N. Fork Valley Rest.*, 176 P.3d 60, 67 (Colo. 2007) (In wrongful death action arising out of a automobile accident in Colorado, the employment relationship between the tortfeasor and his employer – a foreign LLC – provided the court with jurisdiction over the foreign LLC).[4]

The plaintiff has provided documents showing that K3B did not maintain accounting records or primary source documents that would show the reasons for its disbursements or its

---

[4]The defendants' self-serving statements about the lack of consent by the majority of K3B Partners's shareholders does not change the analysis. The plaintiff has not had an opportunity to challenge all of the defendants' affidavits and negative inferences may be drawn from their resistance of the plaintiff's discovery efforts.

financial condition when funds were disbursed from K3B to its shareholder, directors and affiliates.  Those documents support the plaintiff's contention that K3B is the alter ego of Ben Comis, Barry Comis; Hicks/Falcon Creek; Brugger/ RKB Investments, and Viero Group. Disregard of the corporate identity of K3B and imputation of Ben Comis's jurisdictional contacts to all the moving defendants is consistent with their own disregard of corporate formalities.

Taking the plaintiff's allegations as true, the plaintiff has met its burden of demonstrating a prima facie showing of personal jurisdiction.

*Defendants' motion pursuant to Fed.R.Civ.P. 12(b)(7) and Fed.R.Civ.P. 19*

The moving defendants seek dismissal pursuant to Fed.R.Civ.P. 12(b)(7) and Fed.R.Civ.P. 19, arguing that Viero Energy is not subject to this court's jurisdiction and the action cannot proceed in its absence.  Alternatively, the moving defendants assert that Viero Energy is a necessary party whose joinder must be compelled.

Rule 19(a)(1) provides that a person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:

(A) in that person's absence, the court cannot accord complete relief among existing parties; or

(B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

(i) as a practical matter impair or impede the person's ability to protect the interest; or

(ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Rule 19(a)(2) provides that "[i]f a person has not been joined as required, the court must order that the person be made a party."  Rule 19(b) provides that "[i]If a person who is required to be

joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed."

The defendants bear the burden of persuasion under Rule 19. *Lenon v. St. Paul Mercury Ins. Co.*, 136 F.3d 1365, 1272 (10th Cir. 1998). They have not satisfied that burden.

Personal jurisdiction over Viero Energy would exist, for reasons discussed above. The defendants do not contend that its joinder would deprive the Court of *subject matter* jurisdiction. Thus joinder of Viero Energy would be feasible, but that is of no consequence because the defendants fail to show that it must be joined under Rule 19(a).

The defendants have not identified any interest of Viero Energy that will be impaired or impeded by the adjudication of this action. Contrary to their argument, Viero Energy's interest in the finality of the Texas judgment is not such an interest. Principles of res judicata and collateral estoppel would govern the preclusive effect of that judgment, if the plaintiff were to bring a subsequent action against Viero Energy.

The moving defendants concern is that this action poses a risk that they could be held liable in tort or other theories for Viero Energy's obligations. That is not the type of risk that Rule 19 is designed to avoid. The purpose of Rule 19(a)(1)(B)(ii) is to protect an existing party from the risk of a double or inconsistent obligation. The fact that the plaintiff – having obtained a judgment against Viero Energy for breach of contract – might also obtain a judgment against these defendants on other theories of liability or subject them to liability for the judgment debt of Viero Energy, does not show these defendants are subject to risk of an inconsistent obligation. The plaintiff cannot obtain a double recovery, but the plaintiff may recover from more than one person if it can establish that others are liable for those same damages.

-16-

The defendants' motion pursuant to Fed.R.Civ. P. 12(b)(7) is denied.

*Defendants' motion pursuant to Fed.R.Civ.P. 12(b)(6)*

The defendants seek dismissal pursuant to Fed.R.Civ.P. 12(b)(6), asserting that all of the claims fail as matter of law or, alternatively, that some claims fail for insufficient factual allegations.

The defendants argue the doctrine of res judicata requires dismissal of all of the plaintiff's claims in this action because the plaintiff has obtained judgment in the Texas action against Viero Energy. Res judicata requires proof of three elements: "(1) a prior final judgment on the merits by a court of competent jurisdiction; (2) identity of parties or those in privity with them; and (3) a second action based on the same claims as were raised or could have been raised in the first action." *Amstads v. U.S. Brass Corp.*, 919 S.W.2d 644, 652 (Tex. 1996).[5]

The Texas judgment is a prior final judgment, which satisfies the first element. The defendants have not shown the required identity of parties and claims with respect to each claim alleged in the amended complaint.

Res judicata (as well as collateral estoppel/issue preclusion) bars relitigation of whether the February Lease, the March Lease and the alleged repayment agreement were breached (the twelfth, thirteenth, and fourteenth claims for relief).

With respect to the other claims, the defendants have not shown that before entry of the Texas default judgment the plaintiff could have discovered the defendants's participation in the alleged fraudulent scheme or their alleged manipulation of Viero Energy. Res judicata does not

---

[5]Texas law supplies the applicable rules of preclusion because the prior judgment was issued by a Texas state court and no federal issues were involved in that action.

bar the plaintiffs' claims against these defendants for fraudulent misrepresentation; fraudulent

non-disclosure and concealment; promissory fraud; fraudulent transfers; civil theft; RICO;

COCCA; civil conspiracy; negligent misrepresentation or unjust enrichment (the first, second,

third, fourth, fifth, sixth, seventh, eighth, ninth, tenth, or eleventh claims).  As discussed below,

however, the plaintiff's claims of civil theft, RICO, COCCA and unjust enrichment fail for other

reasons.

The moving defendants argue that the doctrine of election of remedies precludes all of

the plaintiff's claims.  There is no merit to that argument.

Election of remedies is a waiver doctrine premised "on the principle that when two

modes of redress are available in a given situation, but are so inconsistent that the assertion of

one amounts to a negation of the other, the deliberate choice of one precludes the subsequent

invocation of the other."  *Louis Cook Plumbing & Heating, Inc. v. Frank Brisco Co.*, 445 F.2d

1177, 1179 (10th Cir. 1971) (citing *First Nat'l Bank in Wichita v. Luther*, 217 F.2d 262 (10th

Cir.1955); *Kuhl v. Hayes*, 212 F.2d 37 (10th Cir.1954); *Holscher v. Ferry*, 131 Colo. 190, 280

P.2d 655 (1955)).  Appellate courts of Colorado and Texas have recognized the doctrine.  *See*

*Holscher*, 280 P.2d at 193; *Roberts v. Tipton,* 562 S.W.2d 921, 923 (Tex. Civ. App. 1978).

The defendants show that in the Texas action, judgment entered on the breach of contract

claim (and not the rescission claim) because the judgment amount includes attorneys' fees,

which were available only by contract.  The defendants argue that the plaintiff is thus precluded

from bringing the claims alleged in this action insofar as the present claims are premised on

fraud in the inducement.

The defendants' argument fails because they have not shown that the remedies sought in this action are inconsistent with an award of damages against Viero Energy for breach of the railcar leases.  At most, the doctrine of election of remedies would preclude the plaintiff from seeking rescission or pursuing any claim that depends on rescission of the railcar leases, but that limitation does not preclude the plaintiff's claims in this action.  The remedies requested in the amended complaint are damages; restitution; avoidance of any wrongful transfer, attachment and/or constructive trust.  Those remedies are not inconsistent with the judgment awarded against Viero Energy in the Texas action for breach of contract.

The moving defendants assert that any duty regarding the plaintiff's deposit funds arises from the railcar leases, and the plaintiff is thus limited to claims of breach of contract according to the economic loss rule.

"The economic loss rule was adopted 'to maintain the boundary between contract law and tort law,'... and focuses on the source of the duty that the defendant allegedly breached." *S K Peightal Engineers, LTD v. Mid Valley Real Estate Solutions V, LLC,* 342 P.3d 868, 875-77 (Colo. 2015) (quoting *Town of Alma v. AZCO Constr., Inc*., 10 P.3d 1256, 1259 & 1262 (Colo. 2000)).  The Colorado Supreme Court has articulated the economic loss rule as follows:

> [A]bsent an independent tort duty, a plaintiff is generally barred from suing in tort if (1) the plaintiff seeks redress for breach of a contractual duty that caused only economic losses, (2) the plaintiff is a party to a contract or a third-party beneficiary of a contract ..., and (3) that contract defines the duty of care that the defendant allegedly violated  or is interrelated with another contract that defines that duty of care.

> If, however, the defendant owes a duty of care to the plaintiff *independent* from the duty contained in the interrelated contracts, then the plaintiff may still sue in tort for violation of that independent duty.

*Mid Valley,* 342 P.3d at 872 (citations omitted).

The defendants' argument about the preclusive effect of the economic loss rule fails.  The plaintiff's tort and statutory claims are premised on duties that arise independently of any duty described in the railcar leases, and the economic loss rule does not bar claims based on conduct that occurred after the leases were signed.  These defendants were not parties to the railcar leases. Where, as here, the entity liable under the written contracts is alleged to be a sham entity, and leases were induced by fraud, the economic loss rule does not preclude tort and statutory claims against owners of the allegedly sham entity or application of the"veil piercing" doctrine.

The defendants argue that the plaintiff's fourth and fifth claims, for violations of the Colorado Uniform Transfer Act, C.R.S. § 38-8-101, et seq. ("CUFTA"), fail on the ground that CUFTA does not have extraterritorial application.

In Colorado, a state statute is presumed not to have extraterritorial effect.  *Frontier Airlines, Inc. v. Dep't of Revenue*, 571 P.2d 1088 (Colo.1977); *Peerless, Inc. v. Clark*, 487 P.2d 574, 575 (Colo. App. 1971).  Determination of a statute's jurisdictional scope requires examination of statute's language, context and purpose.  *See Frontier Airlines*, 571 P.2d at 1089.

CUFTA is based on the Uniform Fraudulent Transfer Act (UFTA), which was derived from the Uniform Fraudulent Conveyance Act.  *See Leverage Leasing Co. v. Smith*, 143 P.3d 1164, 1167 (Colo.App.2006) (citing Tit. 38, art. 8, Uniform Fraudulent Transfer Act Prefatory Note, C.R.S.2009).  CUFTA also incorporates principles from the Bankruptcy Code.

CUFTA does not include specific language addressing its extraterritorial application. The Colorado Court of Appeals has explained, "CUFTA's purpose is to protect a debtor's estate from certain depletions that prejudice the debtor's unsecured creditors. ... By establishing that a

transfer is fraudulent, a creditor may be entitled to remedies, including avoiding the transfer 'to the extent necessary to satisfy the creditor's claim.'" *CB Richard Ellis, Inc. v. CLGP, LLC*, 251 P.3d 523, 529 (Colo. App. 2010)(citing § 38-8-108(1)(a), C.R.S.2009, and *Leverage Leasing*, 143 P.3d at 1167).  That is, the purpose of CUFTA is to protect creditors.

Here, the plaintiff alleges and has produced documents showing that the defendants effected transfers of Viero Energy's assets and made those assets unavailable to UETRR, a Colorado creditor.  Although those transfers occurred outside of Colorado (in Michigan, Arkansas, and/or Canada), the transfers caused detrimental consequences within Colorado. CUFTA applies.

The plaintiff's sixth claim is for violation of Colorado's "Rights in Stolen Property Act" (also known as the Civil Theft Act), C.R.S. § 18-4-405.  For a plaintiff to recover stolen funds from a defendant under that statute, the defendant must have "possession" of the funds.  *See Cedar Lane Investments v. American Roofing Supply of Colorado Springs, Inc.*, 919 P.2d 879 (Colo.App. 1996).  The Colorado Civil Theft Act is not applicable because funds deposited in a bank account are not property of the payor.

The plaintiff's seventh claim alleges violations of RICO.  To state a RICO claim, a plaintiff must allege:  "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Robbins v. Wilkie*, 300 F.3d 1208, 1210 (10th Cir. 2002) (citing *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985); *BancOklahoma Mortgage Corp. v. Capital Title Co., Inc.*, 194 F.3d 1089, 1100 (10th Cir.1999)).  The plaintiff's allegations are insufficient to show the existence of a criminal enterprise or a pattern of racketeering activity.

To satisfy RICO's "pattern" element, the plaintiff must show "relationship" among the predicate acts and "continuity" of the alleged criminal conduct.  *See H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239 (1989).  Continuity is "centrally a temporal concept," which requires either a series of related predicates extending over a substantial period of time ("close-ended continuity") or a clear threat of future criminal conduct related to past criminal conduct ("open-ended continuity").  *Id.* at 241-42.

 Although the plaintiff has alleged acts that could be considered mail and wire fraud, those allegations are not sufficient to show the relationship and continuity required for a pattern of racketeering activity.  The complaint alleges that the defendants made false statements to obtain the plaintiff's deposit funds and to delay and impede the plaintiff's discovery of the alleged fraud while they transferred the funds from Viero Energy's bank account and obtained the funds for their own purposes.  Those predicate acts occurred during a limited time period and the plaintiff has not shown a clear threat of future criminal conduct related to those alleged criminal acts.

In addition, the RICO allegations are insufficient because the amended complaint's description of any enterprise distinct from the defendants is conclusory.

The plaintiff's eighth claim for relief alleges violations of COCCA.  The defendants argue that the COCCA claim fails, repeating its argument that the plaintiff's allegations are insufficient with respect to continuity.  That statute differs from RICO in that the plaintiff does not need to show the continuity required to satisfy the "pattern of racketeering activity" element under RICO.  *See Brooks v. Bank of Boulder*, 891 F.Supp. 1469, 1478 (D. Colo. 1995) (citing *People v. Chaussee*, 880 P.2d 749, 758 (Colo.1994)).  It does require the same showing of a

criminal enterprise and the plaintiff's allegations are insufficient with respect to that element.

The defendants argue that the plaintiff's allegations of civil conspiracy (the ninth claim) are insufficient, asserting that mere association with a person who has engaged in criminal conduct – even with knowledge of the other's criminal conduct – is not sufficient to show participation in a conspiracy.

That argument fails.  The allegations of the amended complaint show much more than some association among the alleged co-conspirators.  The facts alleged support the inferences that the defendants knew Viero Energy had received the plaintiff's deposits and was unable to perform its obligations under the leases; directed or approved Viero Energy's various transfers of the funds; received portions of those ill-gotten funds, and manipulated Viero Energy to shield themselves from the plaintiff's collection efforts.  Those allegations are sufficient to show participation in the alleged conspiracy.

The plaintiff's claim of unjust enrichment (the eleventh claim) is dismissed because that is an equitable remedy, which is not available when a legal remedy is available to the plaintiff. Here the tort and statutory claims provide a damages remedy if the plaintiff prevails.

Based on the foregoing, it is

ORDERED that the Defendants' motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(2) for lack of personal jurisdiction [Dkt. #82] is denied; it is

FURTHER ORDERED that the Defendants' motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(7) for failure to join an indispensable party [Dkt. #82] is denied; it is

FURTHER ORDERED that the plaintiff's motion for dismissal pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim [Dkt. #82] is granted as to the plaintiff's sixth claim (for

violation of the Colorado Civil Theft Act); seventh claim (RICO); the eighth claim (COCCA),

eleventh claim (unjust enrichment); twelfth claim (for breach of the February Lease); thirteenth

claim (for breach of the March Lease), and fourteenth claim (for breach of the alleged repayment

agreement).  The motion is denied as to the plaintiff's claims of fraudulent misrepresentation;

fraudulent non-disclosure and concealment; promissory fraud; fraudulent transfer; civil

conspiracy, and negligent misrepresentation.

The plaintiff shall file an amended complaint on or before October 16, 2015.

Dated:  October 2, 2015

BY THE COURT:

s/Richard P. Matsch

_____
Richard P. Matsch, Senior Judge