IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior District Judge Richard P. Matsch

Civil Action No. 14-cv-01237-RPM

UET RR, LLC,

  Plaintiff,

v.

BENJAMIN D. COMIS,
TALANDA SYKES,
K3B PARTNERS, ULC,
BARRY W. COMIS,
FALCON CREEK ASSET MANAGEMENT, INC.,
RKB INVESTMENTS, LTD,
RICHARD K. BRUGGER,
K. TODD HICKS,
VIERO GROUP, INC.,

  Defendants.

---

FINDINGS OF FACT, CONCLUSIONS OF LAW AND
ORDER FOR JUDGMENT

---

The court has subject matter jurisdiction for this civil action under 28 U.S.C. § 1332 because of complete diversity of citizenship between the plaintiff and all defendants. Personal jurisdiction over some defendants is contested but the court finds personal jurisdiction over defendants, as will be discussed.

**THE PARTIES**

At all relevant times, UET RR, LLC ("UETRR") was and is a limited liability company

formed under the laws of North Dakota with its principal place of business in Lakewood, Colorado.

K3B Partners, ULC ("K3B") was, at all relevant times, an unlimited liability corporation formed under the laws of Alberta, Canada with its principal place of business in Calgary, Alberta, Canada.

Defendant Benjamin D. Comis ("Comis") is a natural person and a citizen of Canada. At relevant times Comis acted on behalf of Viero Energy (identified hereinafter). At relevant times, Comis was also a shareholder and director of defendant K3B Partners.

Defendant Talanda Sykes ("Sykes") is a natural person and a citizen of Michigan. Sykes failed to respond to the original complaint, first amended complaint, and second amended complaint in this case and is in default.

Defendant Barry W. Comis ("Barry Comis") is a natural person and a citizen of Canada. Barry Comis is the father of Ben Comis. At relevant times, Barry Comis was a shareholder and director of K3B Partners.

Defendant RKB Investments, Ltd. ("RKB") is a corporation organized under the laws of Manitoba Canada, with its principal place of business in Brandon, Manitoba, Canada. At relevant times, RKB was a shareholder of K3B Partners.

Defendant Richard K. Brugger ("Brugger") is a natural person and a citizen of Canada and founder, owner and president of RKB. Brugger was RKB's appointee to the board of directors of K3B Partners.

Defendant Falcon Creek Asset Management, Inc. ("Falcon Creek") was a corporation formed under the laws of Alberta, Canada, with its principal place of business in Calgary, Alberta, Canada. At relevant times, Falcon Creek was a shareholder of K3B Partners.

Defendant K. Todd Hicks ("Hicks") is a natural person and a citizen of Canada and founder, owner, president, and managing director of Falcon Creek. At relevant times Hicks was Falcon Creek's appointee to the board of directors of K3B Partners.

The shareholders of K3B Partners are, and were at all relevant times, Ben Comis, Barry Comis, RKB, and Falcon Creek.

The directors of K3B are, and were at all relevant times, Ben Comis, Barry Comis, Brugger, and Hicks.

Viero Group, Inc. ("Viero Group") was, at relevant times, a corporation organized under the laws of Canada with its principal place of business in Calgary, Alberta, Canada.

### RELEVANT NON-PARTIES

United Energy Trading, LLC ("UET") is engaged in energy trading and maintains its headquarters in Lakewood, Colorado. UET organized plaintiff UETRR as a separate legal entity, also located in Lakewood, to buy and transport crude oil by rail from remote production locations such as in North Dakota (Bakken production) and Colorado and Wyoming (Niobrara production) for sale to refiners and other customers at Gulf Coast, East Coast, and California locations, for example. Plaintiff maintained a substantial fleet of leased rail tank cars to support this business.

Viero Energy, LLC ("Viero Energy") was, at relevant times, a limited liability company organized under the laws of the State of Nevada. It was originally formed in 2010 as Viero Infinite Wellness Fund, LLC. The name was changed to Viero Energy in August 2012.

SBG Transport LLC ("SBG") is a company in Arkansas engaged in oil field services, organized by David Selleck and managed by Fred Straub, whose whereabouts are not known.

## FINDINGS AND CONCLUSIONS

After a bench trial the Court makes the findings of fact and conclusions of law required by Fed. R. Civ. P. 52 in narrative form.

On February 19, 2013, UETRR entered into a Draft Railcar Lease Agreement with Viero Energy for the lease of "General Purpose 30,000 gallon cars (GR31) Tank Railcars" at $2,600 per month for 12 months Evergreen." Px 1. The lease was for 120 tank cars to be delivered on or before June 1, 2014, in two 60-car blocks. The "Payment Terms" included "First and last month deposit due upon signing totalling $624,000." Px 1.

A second lease agreement for delivery of another 180 tank cars was signed on March 19, 2013, with a required deposit of $936,000.

The deposits were paid timely by wire transfers from UETRR's bank in Bismarck, North Dakota, to a JP Morgan Chase bank account for Viero Energy in Lathrop Village, Michigan.

No railcars were delivered.

On July 19, 2013, Kenneth Thomson, general counsel for UET, sent a letter to Ben Comis as managing director of Viero Energy, terminating the two lease agreements for failure to perform and requesting immediate return of the two deposits. Px 15-2.

No payments were received despite numerous promises made. On September 17, 2013, UETRR sued Viero Energy in the District Court for Harris County, Texas, and obtained a default judgment on December 13, 2003, for $1,560,00.00 plus pre-judgment and post-judgment interest and attorney's fees. Px 90. By a writ of garnishment, UETRR received $17,524.70 from Chase Bank, being the balance of the Viero Energy account.

After obtaining information in post-judgment discovery, UETRR filed this lawsuit on April 30, 2014.

Ben Comis and Talanda Sykes represented that Viero Energy, LLC was owned in equal shares by K3B and Minks LLC ("Minks"). Minks was formed as a Michigan limited liability company formed by Mohammed Janny and Talanda Sykes in July, 2012, to do business as Massage Green Spa as a franchise business in Kalamazoo, Michigan. Sykes and Janny were to contribute $1,000 each as capital. Janny had done business under that name for some years in Dearborn Heights. Sykes told Janny that Sykes had a corporation called Viero Energy and the agreement was that Sykes would give Janny 50% of Viero Energy and Janny would give Sykes 50% of Minks. Px 51. They had been friends since 2008. Sykes did not pay the $1,000 and on December 14, 2012, Sykes transferred his interest in Minks to Janny but maintained "100% ownership of Viero Energy, LLC." Px 52.

Viero Energy filed for bankruptcy in Nevada on February 25, 2015. The schedules signed by Ben Comis as managing member showed that it was owned 50% for K3B Partners LLC and 50% for "Minics LLC." Px 5P-19. The only assets reported were $6,000 personal property in accounts receivable and a claim against SBG of $1.2 million for railcars that were not delivered as agreed. Px 5P-6.

The Bankruptcy Court for the District of Nevada dismissed the case, finding that the Debtor acted in bad faith in initiating the proceeding and imposed sanctions on the attorney who filed it. Px 5R.

Viero Energy was never a functioning business entity. Viero Energy is only a name used for the transactions relevant to this case. Ben Comis and Talanda Sykes dealt with the plaintiff

and others using that name, knowing that it was nothing more than the name of an account in JP Morgan Chase Bank in Michigan in which the money paid by UETRR was deposited. Ben Comis and Talanda Sykes controlled that account.

K3B was the operating entity using the Viero Energy name. Under Alberta law its members have individual liability for its actions. It had no official presence in the United States. K3B had two accounts in the Bank of Nova Scotia in Brandon, Manitoba, one for U.S. dollars and one for Canadian dollars.

In reality Ben Comis was acting for K3B in entering into these leases using the name Viero Energy. Ben Comis had authority to act for the members of K3B. While Hicks and Brugger used the names of corporations, apparently for tax purposes, they do not have a corporate shield from individual liability for the actions of Ben Comis in conducting the business of K3B.

The lease agreements were not what UETRR assumed them to be when it sued Viero Energy in Texas. At an earlier stage in these proceedings this Court ruled that the plaintiff could not proceed with a breach of contract action against these defendants because of the Texas judgment. At that time this case was seen as an action to collect that Texas judgment alleging fraudulent transfers to render Viero Energy insolvent. The plaintiff and this Court were not then aware of the evidence obtained through discovery and produced at this trial. The Texas judgment is now meaningless because it was based on the false assumption that Viero Energy was a functioning corporate entity. In reality it was a chimera – a mythical creature.

The lease agreements were the result of multiple email and telephone conversations between Ben Comis in Canada and David Balleau, an employee of UET, working in its office in

Colorado.  Each of them had some experience in trading oil products but neither knew the business of leasing tank railcars.  Balleau had joined UET in August, 2011, as a trader who needed to build a "book" of accounts to make money.  He and Comis had met earlier and both were eager to develop a business relationship.

UETRR used tank railcars to transport crude oil from locations in North Dakota and Colorado to places throughout the United States.  It used leased cars and needed to replace several hundred railcars in early 2013 due to expiring leases.

The early conversations between Balleau and Comis concerned possible transactions trading oil.  Balleau told Comis of UETRR's need for tank railcars and in September, 2012, Comis sent a draft of a lease for 111 railcars.  On December 18, 2012, Balleau provided Comis with a copy of a railcar lease and profit sharing agreement between UET and Noble Americas as a sample agreement.  Comis wanted such an agreement but UETRR rejected profit sharing and wanted 300 railcars on a one year lease.  Comis represented that he could provide them.  Comis told Balleau by email on February 8, 2013, that the railcars he had are still 100 days out and confirmed that Viero Energy was the "holder" of the cars.

Comis sent a draft agreement to Balleau on February 11, 2013, which Thomson reviewed and revised.  The February 19, 2013, agreement was executed on February 19, 2013, which Comis signed as "managing director and owner" of Viero Energy.

UETRR immediately wired $624,000 from its bank in Bismarck, North Dakota, to the Viero Energy Chase Bank account in Michigan which had been opened in September, 2012.  From that account Comis caused a wire of $472,800 to SBG 's account at Bank of America on or about February 21, 2013.

After execution of the second lease on March 19, 2013, also signed by Comis as "managing director and owner" of Viero Energy, UETRR wired an additional $936,000 to the Viero Energy Chase account in Michigan and Viero Energy wired $709,000 to SBG's account on or about March 25, 2013.

SBG Transport transferred $362,000 to K3B on June 7, 2013.

Ben Comis blatantly lied to Balleau about Viero Energy and its possession of railcars leading to the signing of the lease agreements. He continued that deception by emailing assurances through the Spring and Summer of 2013, explaining failure to deliver the cars. Sykes took over that role in his communications with Thomson also using false statements about obtaining financing to repay the deposits.

Ben Comis gave testimony that is contradicted by other evidence in many respects. Despite his lack of credibility he has not been shown to have devised a criminal scheme to defraud. Both Ben Comis and David Balleau were unaware of the complexity of obtaining railcars that could meet the regulatory requirements of the American Association of Railroads. They spoke as if they were trading commodities. It is unfortunate that Fred Straub has not been located. Absent his testimony there is no direct evidence of his knowledge of these requirements and of the inspection and certification of the manufacture in and importation of oil tank railcars from China.

It may be charitable to think of Ben Comis and Fred Straub as rank amateurs engaging in transactions that were well beyond their knowledge and capabilities. Neither of them had financial resources available to obtain the railcars they contracted to provide. SBG's business was trucking in oil fields.

Thomson understood that the deposits paid under the leases would be held by Viero Energy to be returned after a failure to deliver the railcars. His view of this dispute was that these payments remained the property of UETRR when they went into the Chase bank account and could be traced through the payments from that account. That could be true if the terms of the agreement had required the deposits to be held in escrow, but there was no contractual restriction on the use of the funds deposited. While the amounts paid were obviously insufficient to be used for the purchase of 300 newly manufactured railcars it could reasonably be expected that Viero Energy would use those funds in some form of financing to obtain the cars. The agreements did not require that Viero obtain title to the railcars. Leasing them from SBG and subleasing to UETRR would have been compliant with the obligation to provide the railcars under the lease agreements. That was the apparent intention of Ben Comis is dealing with SBG for a five year lease of newly manufactured railcars to be obtained by Fred Straub.

Ben Comis relied on Fred Straub to provide the railcars for sub-lease to UETRR. On January 23, 2013, Ben Comis as Viero Energy entered into a Railcar Lease Agreement with Fred Straub as SBG to lease 180 tank cars for 60 months Evergreen at $1,970 per car per month to be delivered by July 31, 2013, with a $709,200 deposit. Px 29. Another such lease agreement was signed on February 12, 2013, for 120 tank cars at the same price for 60 months with delivery by June 1, 2013. Px 27. A total of $1,194,000 was paid from the Viero Energy account in Michigan to SBG's Bank of America account pursuant to these leases.

Comis did not ask for manufacturing information before signing the leases with SBG. He was defrauded by Fred Straub, but he had made no effort to do due diligence and passed on false information knowingly.

K3B filed for bankruptcy in Calgary, Alberta, in December, 2014. The appointed Trustee filed a report, dated February 25, 2015. Px 62. That report included the following paragraphs:

> The Company did not maintain any accounting records, accounting ledgers or financial statements. Further, we understand that the Company does not have source documents to support its transactions. Accordingly, our review was limited to the Company's bank statements for both a Canadian and US dollar account held with Scotiabank and from discussions with a director of the Company.

> The scope of our review was limited to transactions greater than $500 that occurred during the period March 13, 2013 to February 28, 2014, shortly prior to the date the Company advises the accounts were closed due to inactivity and nominal account balances....

> Without any accounting records or financial information, we are unable to determine whether the Company was insolvent at the time of these transactions. It appears that at the time of these transactions, the Company's liabilities included promissory notes granted in 2011 and 2012 totalling $302,500 USD and its assets included cash in bank accounts and its interests in Viero Energy ULC, Viero Group Inc. and Rockstock Inc.

Px 62-1 and 2.

The members of K3B conducted business by e-mail using an account paid for by a personal credit card of Hicks. When he stopped paying the account closed and the records lost. Many have been produced from other participants but it is not possible to trace all of the relevant transactions.

Importing railcars from China would be a difficult and time-consuming process requiring on-site inspections by U.S. Inspectors and rigid requirements to insure safety. No meaningful steps were taken to get that done.

The inexperience of the K3B members in financing arrangements is again shown by the effort to obtain funds to repay the plaintiff from an entity known as Wall Street Investors to whom they paid $200,000 apparently as an advance fee for financing that was never provided.

There are three categories of false representations made by Ben Comis that caused injury to the plaintiff. First is the representation of Viero Energy's existence as a viable business entity. This is implicit in the discussions leading to the execution of the lease agreements and in the leases themselves. It is most egregious in the submission of a completely false and contrived Profit and Loss Statement sent by Ben Comis to David Balleau on July 23, 2013, purporting to show total income of $37,556,215.55 received in the first six months of 2013. Px 14-2.

The second category are the representations that Viero Energy was the holder of 300 railcars and the delivery dates in the agreements.

The clearest example of that is the email from Comis to David Balleau, dated February 14, 2013, sending a set of specifications for a "Viero Energy Tank Car" with the statement that "ALL OUR CARS ARE FRA, AAR, & DOT APPROVED." Px 1A-3. This was accompanied by a photograph of a tank car, which had been sent to Comis by Fred Straub on January 28, 2013, with some other specifications. Px 256. All of this was false.

These representations were material inducements to the plaintiff's execution of the leases and thus payment of the deposits.

The third category are all of the excuses and promises made after the delivery dates delaying any recovery while there was some money still in the Chase bank account. That is best illustrated by Ben Comis' response to the July 19, 2013 letter from Kenneth Thomson, general counsel for UET, terminating the agreements and requesting immediate return of the deposits. Ben Comis wrote:

> Our current situation is we have had to put up full payment for the cars as they are fully completed which means we have to make payment and we are sitting with 480 cars and another 120 sitting around 65% completion. The rest of our free-cash is being tied up in the DR as we pay cash and leverage a partial

instrument for moving product into the DR for other products we move. After reviewing our cash flow and contract terms, the free-cash availability will not be available until October 8-14 (depending on voyages of vessels which is why the range because of our delivery schedule) to provide the return of the deposit.

Px 17.

Nothing he said was true.

David Balleau did not do any due diligence to determine the true facts before submitting the agreements to his employer. It may be argued that this failure is relevant to the question of reasonable reliance on these false statements but that argument is not persuasive given the volume of the false statements made. There had been a product trade with Comis using the Viero Energy name and Comis had developed enough of a personal relationship to generate some trust in him by the naive Balleau.

UETRR has proven by a preponderance of the evidence that it lost $1.56 million in the deposits by fraudulent inducements made by Ben Comis and it lost any means of recovery of that money by the repeated fraudulent representations made by Ben Comis and Talanda Sykes after failure of delivery.

The other Canadian defendants challenge this court's jurisdiction over them in this action. Their exposure is indirect – as members of an unlimited liability company under the law of Alberta, Canada.

Whatever knowledge the other members of K3B had of what Ben Comis was representing, they expressly authorized his management of that part of the business done under the name of Viero Energy. He acted as their agent and they are individually liable for the injury to the plaintiff caused by that conduct.

The damages from this common law fraud the loss of the deposits, and the plaintiff is entitled to prejudgment interest at the statutory rate provided by C.R.S. § 5-12-102 (8% compounded annually) from the date that Thomson demanded return of the deposits (July 19, 2013) to the date of entry of judgment upon this order.[1]

UETRR seeks exemplary damages pursuant to C.R.S. § 13-21-102 because of the fraud. The conduct of Ben Comis was not only fraudulent but can be considered "willful and wanton" under that statute because he acted in reckless disregard of the rights of the plaintiff.

It was fanciful for him to expect that he could obtain 300 railcars from a two man trucking company in Arkansas. His bold assurances to Balleau, Thomson and others at UETRR were egregious and reprehensible. This finding is made beyond a reasonable doubt. He deserves punishment by being obligated to pay $100,000 in punitive damages. The conduct of Talanda Sykes is equally egregious and reprehensible and is to be punished by an equal amount, $100,000.

The other defendants have liability for the compensatory damages, jointly and severally, but there is no basis for punishing them by an award of exemplary damages. They are also subject to personal jurisdiction in this court because Ben Comis acted under their authority as members of K3B and his tortious conduct impacted a citizen of Colorado in Colorado.

---

[1]On September 23, 2014, UETRR recovered $17,524.70 through a post-judgment garnishment proceeding in the Texas action. Px 91B-2. The prejudgment interest to be awarded requires calculation of 8% interest compounded annually on the principal amount of $1,560,000 for the period from July 19, 2013 through September 23, 2014, and calculation of the interest on that cumulative amount less $17,524.70 for the period from September 24, 2014, through the date of entry of judgment.

In addition to common law fraud, UETRR made claims under two Colorado statutes–the Colorado Organized Crime Control Act (COCCA), C.R.S. § 18-17-101 et seq., and Colorado's Uniform Fraudulent Transfer Act, C.R.S. § 38-8-101 et seq. (CUFTA).

The COCCA claim is based on the theory that the required "enterprise" consists of Viero Energy and all named defendants. This Court has found that Viero Energy was nothing more than a name used by the K3B members. There is no enterprise separate from K3B. The evidence does not support a pattern of racketeering activity. That claim is dismissed as not proven.

The CUFTA claim also fails. Under Colorado law, a statute is presumed not to have extraterritorial effect. *See Frontier Airlines, Inc. v. Dep't of Revenue*, 571 P.2d 1088 (Colo.1977); *Peerless, Inc. v. Clark*, 487 P.2d 574, 575 (Colo. App. 1971). The transfers that the plaintiff says violated CUFTA occurred in Michigan, Arkansas, and Canada.

The plaintiff's claim that all payments from the deposits in the Chase bank account were transfers in fraud of it as a creditor as of the time of the lease agreements were signed is rejected. Additionally the payments to SBG were made on the assumption that they were for its leases and were therefore considered for value because the evidence does not show that Comis knew Straub could not produce railcars.

The plaintiff's claim of conspiracy is redundant to the fraud claim except as to the defendant Sykes. He was not a member of K3B but he did actively conspire with Ben Comis in the fraudulent operations in the name of Viero Energy and is liable as a conspirator.

Based on the foregoing it is

ORDERED that on plaintiff's claim of fraud, judgment shall enter in favor of the plaintiff and against defendants Benjamin D. Comis; Talanda Sykes; K3B Partners, ULC; Barry W. Comis; Falcon Creek Asset Management, Inc.; RKB Investments, Ltd.; Richard K. Brugger; K. Todd Hicks, and Viero Group, Inc., jointly and severally, in the principal amount of $1,542,475.30 together with pre-judgment interest pursuant to C.R.S. § 5-12-102 in the amount of $530,128.09 and post-judgment interest from the date of judgment. It is

FURTHER ORDERED that the judgment against Benjamin Comis and Talanda Sykes shall include punitive damages in the amount of $100,000.00 each as of the date of the judgment.

Plaintiff is entitled to costs upon the filing of a bill of costs pursuant to D.C.COLO.LCivR 54.1.

Dated: May 9, 2017

BY THE COURT:

s/Richard P. Matsch
_____
Richard P. Matsch, Senior Judge